## RICHARDSON *v.* HARDWICK.

A., the owner of lands, covenanted that by making certain payments within a period named B. might become equally interested in them. B. did not agree to purchase, and he never made any payment. *Held*, that an estate in the lands was not by the contract vested in B., and that his failure to make payment within the time limited therefor worked a forfeiture of his privilege under the contract.

APPEAL from the Circuit Court of the United States for the Eastern District of Michigan.

The case is stated in the opinion of the court.

*Mr. D. C. Holbrook* and *Mr. H. H. Wells* for the appellant.

*Mr. Alfred Russell* and *Mr. Henry M. Campbell* for the appellee.

MR. JUSTICE WOODS delivered the opinion of the court.

This was a bill in equity filed by Richardson to compel the specific performance of a contract relating to lands between him and Hardwick.

The contract describes the lands, and then proceeds : —

" The above-described lands have been purchased by me under an arrangement with Arthur R. Richardson, as follows : It is understood that said Richardson may become equally interested in the above lands by paying to me one-half the purchase price of the lands, together with an equal share of all expenditures made by me for taxes or any other purpose, and also ten per cent interest on all capital furnished by me in connection with his half interest. It is further understood that the purchase price of the lands bought of T. H. Eaton is to be reckoned at $10 per acre, and the terms of the above agreement are. limited to' two years from this date. Said· Richardson is to pay one-half his share in. one year and the balance in two years.

" ALPENA, Oct. 1st, 1868.

" Arthur R. Richardson may cut timber on the within-described lands on the following terms: He is to pay ($1.50) one dollar and a half per thousand feet, board measure, for all timber cut by him, and he further agrees to cut not less than twelve (12) thousand feet from each and every acre on which he may cut any, or in the event of his not doing so, he agrees to pay for twelve thousand feet, the

same as though that amount had been cut by him. The logs are to be holden for the stumpage and to be his when paid for, it being understood that payment is to be made for the same when they come into market.

"B. C. HARDWICK.
"ARTHUR R. RICHARDSON.

"ALPENA, Oct. 1st, '68."

It is not disputed that before the date of this contract Hardwick purchased the lands described therein, paid for them in full out of his own means, and received a deed therefor in his own name. Prior to Oct. 1, 1870, the date at which the two years mentioned in the contract expired, Richardson had, on the terms mentioned in the contract, cut timber on the lands, and paid to Hardwick for " stumpage " $4,050, and, unless this is to be considered a payment on the contract, he, up to the date mentioned, made no payment whatever thereon. On or just before Oct. 1, 1870, by a verbal contract between the parties, the time for the payment by Richardson of the half of the price of the lands was extended to Oct. 1, 1871. Neither up to that time nor subsequently did he make or tender payment on the land. In the mean time Hardwick was selling timber off them, and in the year 1872 sold all the lands except one hundred and sixty acres. The contention of Richardson now is, that, after crediting upon the contract one-half the amount received by Hardwick for timber and lands sold, the half of the purchase-money and other expenses, which he was to pay in case he became equally interested in the lands, has been satisfied, and that he is entitled to an equal share of the proceeds of the timber and lands, and to a conveyance of an undivided half of the lands remaining unsold. But it was not until May or June, 1874, that he ever intimated to Hardwick that he claimed an interest in the lands, and his claim was then peremptorily denied by Hardwick, and it was not until he filed the bill in this case, Dec. 10, 1875, that he ever made any definite demand on Hardwick for an account of the proceeds of the sales of timber and lands, or a conveyance of the undivided half of the lands remaining unsold.

Upon final hearing, upon the pleadings and evidence, the Circuit Court dismissed the bill, and Richardson appealed.

The rights of the parties must be governed by their contract in writing entered into on Oct. 1, 1868. All their previous negotiations resulted in that contract, and it was never subsequently changed, except by the verbal agreement to extend for one year the time allowed by it to Richardson to refund to Hardwick one-half the purchase-money, expenditures, and taxes paid by him.

We cannot give any weight to the assertion of Richardson that it was one of the unexpressed terms of the contract that one-half of the proceeds of timber sold from the lands should be indorsed upon the contract as payments made by him thereon. It is a matter in dispute between the parties whether any such understanding existed.

If it were competent to prove such an understanding by parol, the burden of proof would be on Richardson to establish it. He, in his testimony, affirms the existence of this understanding, and Hardwick, in his testimony, denies it. We think that the other testimony in the case leaves the preponderance of evidence on this point with the defendant.

But evidence to establish this understanding is clearly inadmissible. In respect to this matter the contract is free from ambiguity. Its plain meaning is that Richardson was to make payment directly to Hardwick, in money of one-half the amount paid by the latter on the lands. It is, therefore, not competent to show by parol that payment was to be made in some other way than that specified in the written instrument. *Sprigg* v. *Bank of Mount Pleasant*, 14 Pet. 201; *Specht* v. *Howard*, 16 Wall. 564; *Forsythe* v. *Kimball*, 91 U. S. 291; *Brown* v. *Spofford*, 95 id. 474.

Looking, therefore, at the contract as reduced to writing by the parties, we are clear that Richardson is not entitled to the relief prayed for by his bill.

The written contract gives him the privilege, or, as counsel call it, an "option," to become equally interested in the lands by paying one-half the purchase-money, &c., within two years after its date. The contract, of itself, did not vest him with any interest or estate in the lands. It merely pointed out the mode in which he might acquire an interest, namely, by paying a certain sum of money within a certain time. He did not pay

the money within the time limited by the contract, and has never paid it or any part of it; and eighteen months before the commencement of this suit Hardwick gave him notice that his option to purchase had been lost, and told him that he had no interest in the lands.

It is clear from the terms of the contract that Richardson was not bound by it. He did not agree to purchase any share in the lands or to pay Hardwick any money. The contract gave Hardwick no cause of action against Richardson. The latter was not bound to become interested in the lands, or to pay any money thereon, unless he chose to do so.

In suits upon unilateral contracts, it is only where the defendant has had the benefit of the consideration for which he bargained that he can be held bound. *Jones* v. *Robinson*, 17 L. J. Exch. 36; *Mills* v. *Blackall*, 11 Q. B. 358; *Morton* v. *Burn*, 7 Ad. & E. 19; *Kennaway* v. *Treleavan*, 5 Mee. & W. 498.

In this case Richardson having failed to pay the money or any part of it within the time limited, the privilege accorded him by the contract was at an end, and all the rights under it ceased.

The decree of the Circuit Court dismissing the bill was, therefore, right, and must be

*Affirmed.*